## Lewis *versus* Ross.

If the record of a judgment of a Court of record is incomplete, through the mistake of its clerk, it may be corrected, when discovered by the Court.

No lapse of time will divest the Court of its power to make *such corrections.*

Thus where a trustee disclosed at the return term of the summons, was charged, and entitled to his cost by law, and the clerk, in making up the record, omitted to recite the allowance of his costs; it was *held*, that the record was amendable, after *scire facias* against the trustee, even without motion.

One, who has been summoned and charged as trustee on his disclosure at the first term, may retain his legal costs out of the property in his hands al-

though in the record of the judgment the allowance of his costs has been omitted.

ON FACTS AGREED.

SCIRE FACIAS, against defendant, as trustee of one James Warren.

At the return term of the writ in the original suit, the defendant made a disclosure, was charged as trustee, and judgment obtained in that suit for $117,91, damages, and $89,83, costs.

The execution issued on the judgment was committed to an officer who demanded of the defendant within thirty days after the judgment, the goods, effects and credits of Warren in his hands, wherewith to satisfy the execution.

The defendant paid over $11,75, which was indorsed on the execution, claiming to hold $11,60, for his costs in two cases, where he was summoned at the same time, this action against Warren being one of them. But there was no judgment rendered for his costs in either case.

The plaintiff claimed not only the amount retained by the trustee as his costs, but a much larger sum.

The material part of the disclosure was in these words; "about the 25th of December, 1852, I made a contract with said Warren for a lot of hay valued at $102, two cows valued at $18, a yoke of steers valued at $40, at his barn in Shapleigh. I paid him one dollar in part payment. I was to send for the hay, cows and steers, and pay for the same when delivered. I sent for and received hay I valued at $58,35, and paid him on account of the same, $35, leaving a balance due him of $23,35. I received no more hay, nor the cows or said steers. The steers were driven to my house by persons employed by me to haul said hay, but without any authority from me, and I refused to receive them or pay Warren for the same, although he demanded pay for the same, because I had understood that Dr. Lewis had some claim on said steers by a bill of sale or in some other way, and I did not consider it safe to pay said Warren for the same. The steers remained in my shed, yoked and

chained, and I ordered them to be fed and taken care of, the same as other cattle. The next morning, this trustee process was served on me; after which, said Warren came over to my house and claimed said steers as his, because he alleged that I had not paid him for the same according to agreement, and he took and drove them away. I forbid his taking them, but he persisted, and I have not seen them since, and have never received any profit or advantage therefor."

It was stipulated, that upon the facts and the disclosure, the Court are to render judgment according to the rights of the parties.

*N. D. Appleton,* for plaintiff.

*D. Goodenow,* for defendant.

HOWARD, J. — The defendant was adjudged trustee of Warren, and this suit is brought to determine the amount for which he was accountable upon his disclosure. By that it appears, that the defendant had contracted for "a lot of hay, two cows, and yoke of steers" with the principal, and "was to send for the hay, cows and steers, and pay for the same when delivered." Before the service of the trustee process upon him, he had sent for and received a portion of the hay, for which he had made payment in part. Neither the remaining portion of the hay, nor the cows or the steers, were delivered or received under the contract. For the property received and not fully paid for, it is admitted, that the defendant was held as trustee.

It is contended, that the contract was entire, and that, as the defendant had taken a part of the goods, he had the right to the possession, and the power to take immediate possession of the whole; and that he must be regarded as having the whole property intrusted to him, within the meaning of the statute, and charged accordingly. R. S., c. 119, § 4. But it appears, that the property not delivered under the contract, remained in possession of the principal, and did not pass to the defendant. It was open to attach-

ment as the property of the former, and could not be sub-
ject to attachment as the property of the latter. The sale
had not been perfected under the contract. Though the
steers were temporarily in the keeping of the defendant,
they were taken and used, by persons employed by him
to haul the hay, but without his authority, and he refused to
receive them, or pay for them. They were not, then, in his
possession under the contract, and were not goods or effects
of the principal entrusted or deposited in his hands, within
the intent of the statute. His claiming to hold them, after
the trustee process was served upon him, cannot change the
facts, or right to the property, at the time of the service.
This is unlike the case of *Lane* v. *Nowell & trustee*, (15
Maine, 86,) cited for the plaintiff. There the goods ap-
peared to have been delivered to the trustee, and he had
engaged to account for them, and actually controlled them
under the conveyance, and written contract.

The defendant was chargeable only for the unpaid balance
due for the hay received, as trustee. That amount, after
deducting his costs on disclosure, he paid to the officer hold-
ing the execution, on demand. We do not understand that
the amount of such balance or costs are in controversy.
But it is contended, that no deduction should have been
made for the trustee's costs, and that the whole balance
should have been paid to the officer.

The defendant having duly submitted to an examination
on oath at the first term and disclosed, and having been ad-
judged trustee, was entitled to his costs, and authorized " to
deduct from the amount in his hands, the amount of such
costs." R. S., c. 119, § § 16, 17. He claimed to retain his
costs as taxed in Court, and the taxation and claim form a
part of his disclosure. But no specific or separate judg-
ment for such costs appears of record, or was noted upon
the docket. The judgment, charging him as trustee upon
his disclosure, established his right to his costs, which are
secured to him by statute. It was a substantial finding for
him, though not properly docketed and recorded. The

judgment appears to have been imperfectly recited in its details, and the record is incomplete. But it would not comport with the justice of the case, that a party clearly entitled to his costs, should be deprived of them by a mere informality in the record, or misprision of the clerk. Errors of this kind are not errors in the judgment of the Court, in point of fact, and are amendable at any time.

"The forms of the Court are always best used, when they are made subservient to the justice of the case," said Lord Kenyon, in *Mara* v. *Quin*, 6 T. R. 8. In *Cradock* v. *Ratford*, 4 Mod. 371, the Court ordered the roll to be brought in and amended, after the judgment had been signed twenty years. *Hanckford* v. *Mead*, 12 Mod. 384; *Short* v. *Coffin*, 5 Burr. 2730. In *Mechanics' Bank* v. *Minthorne*, 19 Johns. 244, the Court, on motion, ordered the entry of satisfaction of the judgment, and all proceedings in the case, subsequent to the interlocutory judgment at a previous term, including the assessment of damages, to be vacated, and the record of the judgment to be canceled, and the damages to be reassessed. *Chichester* v. *Caude*, 3 Cowen, 39; *Hart* v. *Reynolds*, 3 Cowen, 42, n. a., where the Court adopted the result of the learned research of counsel, in allowing the amendment of the record of the judgment, and proceedings connected therewith, filed six years previously.

This Court has sanctioned the same doctrines, and amended its records in furtherance of justice, and according to the truth of the case. *Crofton* v. *Ilsley*, 6 Maine, 48; *Wright* v. *Wright*, 6 Maine, 415; *Limerick, Petitioners*, 18 Maine, 183; *Hall* v. *Williams*, 10 Maine, 278.

Although no motion has been presented to us to allow the amendment in this case, yet the error is apparent, and the subject is before us upon the facts and documents connected with the imperfect record, and addresses itself to our discretion. Shall the record stand as it is, stamped with an infirmity, to perpetuate a wrong? Or shall we cause an amendment to supply the deficiencies that have

Lewis v. Ross.

occurred by accident or mistake, and when it is evident that no one can suffer by the correction?

On general principles, it is competent for a court of record, and incident to its authority, to correct mistakes in its records, which do not arise from the judicial action of the Court, but from the mistakes of its recording officer. In doing this, it may regulate its own action upon its own sense of responsibility and duty, and proceed upon suggestion, or on motion of those interested, or upon its own "certain knowledge and mere motion." It would not be an adversary proceeding, in which, of necessity, there should be parties, or in which notice would be required. *Balch* v. *Shaw*, 7 Cushing, 282.

It would seem that no lapse of time will divest the Court of its power, or absolve it from its duty, to supply deficiencies in the records of its own proceedings, where justice and the truth of a case require it, and when it is enjoined by statute. R. S., c. 100, § § 14, 15.

In civil actions, the prevailing party is entitled to costs, and they follow the judgment, as of course, either on verdict, nonsuit or default, and practically are taxed, allowed and incorporated into the judgment by the clerk, without any special order, unless upon objection or special hearing.

In *Norris* v. *Hall*, 18 Maine, 332, it did not appear that the trustee appeared at the first term, and submitted to an examination; or that any costs were taxed, claimed or allowed for him, or that he was entitled to any, by judgment of Court.

We are of opinion that the record of the judgment of this Court, in the original suit, should be corrected and completed, so that it will show expressly, that the legal costs taxed and claimed by the trustee, in his examination and disclosure under oath at the first term, were allowed. Then judgment should be entered for defendant, according to the agreement.

SHEPLEY, C. J., and RICE, HATHAWAY and CUTTING, J. J., concurred.